FILED
CLERK

9:28 am, Aug 13, 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
WAYNE RICE,

                Plaintiff,

        -against-

SMITHTOWN VOLKSWAGEN and JOE
BINDELS,

                Defendants.

--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:17-cv-03649 (ADS)(AYS)

**APPEARANCES:**

**Scott Michael Mishkin, P.C.**
*Counsel for the Plaintiff*
One Suffolk Square, Suite 240
Islandia, New York 11749
      By:    Scott M. Mishkin. Esq.,
              Paul A. Carruthers, Esq.,

**Law Offices of John B. Zollo, P.C.**
*Counsel for the Defendants*
38 Southern Blvd., Suite 3
Nesconset, New York 11767
      By:    John B. Zollo, Esq.,

**SPATT, District Judge**:

On June 16, 2017, the plaintiff Wayne Rice (the "Plaintiff") commenced this employment discrimination action against his former employers Volkswagen Group of America and Smithtown Volkswagen (together, the "Corporate Defendants"), as well as an individual employed by the Corporate Defendants, specifically, Joe Bindels ("Bindels") (together with Smithtown Volkswagen, the "Defendants"). The Plaintiff alleges gender discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and New York Executive Law § 290, *et seq.* ("NYHRL").

1

Presently before the Court is a motion by the Defendants, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6), seeking to dismiss the Complaint for failure to state a claim upon which relief may be granted.

For the following reasons, the Court denies the Defendants' motion to dismiss.

## I.  BACKGROUND

### A.  THE FACTUAL BACKGROUND

#### 1.      The Parties

Unless otherwise noted, the following facts are drawn from the Plaintiff's Complaint, and for the purposes of the instant motion, are construed in favor of the Plaintiff.

The Plaintiff is a male heterosexual. Compl. ¶ 10. At the time of the facts underlying the Complaint, the Plaintiff was a resident of Suffolk County. *Id.* ¶ 4.

Smithtown Volkswagen is an automobile dealership located in Suffolk County. *Id.* ¶¶ 6, 14. Bindels is an officer and owner of Smithtown Volkswagen. *Id.* ¶ 8. In this role, Bindels possesses the authority to hire, fire and make personnel decisions. *Id.* ¶ 11.

The Plaintiff worked at Smithtown Volkswagen from September 21, 2015 to September 4, 2016 as a general sales manager. *Id.* ¶¶ 17, 42. According to the Complaint, Bindels set out the Plaintiff's job responsibilities, which included ordering inventory and providing pricing to salespersons for transactions with customers; overseeing the preparation and delivery of sales; overseeing the finance department; appraising used cars; handling issues with the manufacturer; and administering various customer retention and outreach programs. *Id.* ¶¶ 18–21. During his time at Smithtown Volkswagen, the Plaintiff purportedly performed all of his duties in a satisfactory manner. *Id.* ¶¶ 21, 49.

## 2. The Relevant Facts

The Plaintiff alleges that, over a roughly six month period, Bindels engaged in an ongoing series of harassing behavior to him consisting of overt sexual advances; the sending of graphic sexual imagery; and promises of job security in exchange for sexual favors. Furthermore, the Plaintiff claims that Bindels continued this conduct despite multiple objections and protests from the Plaintiff, culminating in Bindels directing another Smithtown Volkswagen employee to fire the Plaintiff.

Bindels's alleged harassment began on February 20, 2016, when, from his work e-mail address, he sent the Plaintiff several full body naked pictures of himself masturbating. *Id.* ¶¶ 23–24. These pictures included a close-up enlarged picture of the head of Bindels's penis with white fluid dripping down, as well as pictures of Bindels lying totally naked on his back with his legs spread and his penis fully erect. *Id.* ¶ 25.

Less than a week later, on February 26, 2016, the Complaint alleges that Bindels went to the Plaintiff's office and asked him if he liked the pictures. *Id.* ¶ 27. The Plaintiff responded by asking Bindels why he sent the pictures, telling Bindels he did not like them, and expressing his desire for Bindels to leave him alone. *Id.* ¶ 28.

According to the Complaint, Bindels continued making sexual advances despite the Plaintiff's objections in their February 26, 2016 confrontation. *Id.* ¶ 29. Specifically, Bindels told the Plaintiff on several additional occasions that he wanted to have sex with him. *Id.* Each time, the Plaintiff refused and told Bindels to stop. *Id.* ¶¶ 30, 32, 36, 39.

For instance, the Complaint alleges that on or about April 15, 2016, Bindels approached the Plaintiff again asking if he liked his photographs and told the Plaintiff that "we should get together and have some fun." *Id.* ¶ 31.

As time progressed, Bindels allegedly began tying his advances to promises of job security. Specifically, on or about June 15, 2016, Bindels told the Plaintiff that his job at Smithtown Volkswagen would be secure in the future if he had sex with Bindels. *Id.* ¶ 35. And on August 24, 2016, Bindels told the Plaintiff that he would make more money and have a secure future at Smithtown Volkswagen if he succumbed to Bindels's advances. *Id.* ¶ 38.

After this last incident, the Plaintiff lodged an informal complaint with another Smithtown Volkswagen employee, telling the newly hired general manager, David Hovell ("Hovell"), about the naked pictures from Bindels and imploring him that something needed to be done to stop the harassment. *Id.* ¶ 41.

Shortly thereafter, the Complaint alleges that, on September 4, 2016, Bindels ordered Hovell to fire the Plaintiff for rejecting his advances and for complaining to Hovell. *Id.* ¶ 42. Upon receiving this directive, Hovell called the Plaintiff and told him that "they" were going to go in a different direction, and that his services were no longer needed. *Id.* ¶¶ 43–44. When the Plaintiff asked why he was fired, Hovell did not describe any performance issues or other business reasons for the decision. *Id.* ¶ 46. Rather, Hovell simply stated: "Joe (Bindels) no longer wants you here." *Id.* ¶ 45.

On these facts, the Plaintiff alleges causes of action based on gender discrimination through sexual harassment and retaliation in violation of Title VII and the NYHRL.

**B. THE PROCEDURAL BACKGROUND**

On June 16, 2017, the Plaintiff filed the present action against Volkswagen Group of America, Smithtown Volkswagen, and Joe Bindels claiming violations of Title VII and the NYHRL. The Plaintiff filed this action prior to the expiration of 90 days after receiving a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC").

On September 20, 2017 the Defendants moved under Rule 12(b)(6) to dismiss the Complaint, contending that the Plaintiff's allegations, even if taken as true, fail to plausibly state a claim upon which relief can be granted.

On December 22, 2017, the Plaintiff dismissed the action with prejudice against Volkswagen Group of America pursuant to Rule 41(a)(1)(A)(ii).

## II. DISCUSSION

### A. LEGAL STANDARD FOR A MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See, e.g.*, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bolt Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F.Supp.2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has expounded that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss. FED. R. CIV. P. 8(a)(2). Under Rule 8, a complaint is not required to allege "detailed factual allegations." *Kendall v. Caliber Home Loans, Inc.*, 198 F.Supp.3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

**B.  WHETHER THE COURT MAY CONSIDER EVIDENCE OUTSIDE THE COMPLAINT**

As a preliminary matter, the Defendants attached eight documents to their motion to dismiss: (1) a September 20, 2016 claim letter sent by the Plaintiff's counsel to the Defendants; (2) two letters sent by the Defendants' counsel to the Office of the Suffolk District Attorney, dated September 29, 2016 and October 5, 2016; (3) a background search performed on the Plaintiff; (4) a copy of the Policy and Procedures Manual for Smithtown Volkswagen; (5) e-mails purportedly from a Smithtown Volkswagen employee to Bindels; (6) an affidavit from Bindels; (7) an affidavit from Hovell; and (8) letters sent by Smithtown Volkswagen to a former employee regarding a prior incident of harassment in the workplace. *See* Zollo Decl. The Defendants rely on these documents to argue that they terminated the Plaintiff for performance reasons, and that Bindels was not involved in the decision to terminate the Plaintiff. Before proceeding to the merits, the

Court must first address whether to consider these materials for the purposes of adjudicating this motion.

"Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 216 (E.D.N.Y. 2018) (Spatt, J.); *see also Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011) (noting that the Second Circuit has recognized "exceptions to Rule 12(b)(6)'s general prohibition against considering materials outside the four corners of the complaint"). In exercising its discretion, the Court may consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Envtl. Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.); (quoting *In re Merrill Lynch & Co.*, 273 F.Supp.2d 351, 356–57 (S.D.N.Y. 2003), *aff'd in part and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006)).

The Court declines the Defendants' invitation to resolve this motion using evidence beyond the four corners of the Complaint. Despite relying extensively on the documents attached to their motion to dismiss, the Defendants do not explicitly provide their rationale for considering these documents. Most likely, the Defendants believe that the attached exhibits were somehow "integral" to the Complaint or otherwise incorporated by reference. However, "[t]o be incorporated

by reference, the complaint must make a clear, definite and substantial reference to the documents and to be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Johnson v. Levy*, 812 F. Supp. 2d 167, 177 (E.D.N.Y. 2011) (Spatt, J.) (quoting *DeLuca v. AccessIT Group, Inc.*, 695 F.Supp.2d 54, 60 (S.D.N.Y. 2010)). The Defendants fail to identify any of either such circumstance in the Complaint.

To the contrary, it appears that the Defendants attached these documents to their motion to dismiss solely for the purpose of refuting facts alleged in the Complaint. Consequently, considering said documents "would require credibility assessments and weighing of the evidence, which is not appropriate on a motion to dismiss." *Johnson*, 812 F. Supp. 2d at 176; (refusing to consider affidavits, contracts and credit reports attached to the motion to dismiss); *Envtl. Servs., Inc.,* 7 F. Supp. 3d at 269–70 (refusing to consider various declarations); *Kaible v. U.S. Computer Grp., Inc.*, 27 F. Supp. 2d 373, 376–77 (E.D.N.Y. 1998) (Spatt, J.) (refusing to consider letters, agreements and transcript excerpts); *Garnett-Bishop v. New York Cmty. Bancorp*, Inc., No. 12-CV-2285 ADS ARL, 2014 WL 5822628, at *13 (E.D.N.Y. Nov. 6, 2014) (Spatt, J.) (refusing to consider "affidavits, receipts, and letters"). At this stage of the litigation, the Court must only assess the feasibility of the legal theories in the Complaint, not whether the Plaintiff established such theories. *DiFolco*, 622 F.3d at 113. As such, the Court will wait to review the evidence until after the parties benefit from complete discovery.

Therefore, the Court will exclude the additional material and decide the motion on the Complaint alone and the law governing Rule 12(b)(6).

## C. THE DISCRIMINATION CLAIMS

In relevant part, Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [the] . . . terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e–2(a)(1). Similarly, Section 296(1) of the NYHRL renders it unlawful "[f]or an employer . . . because of the . . . sex . . . of any individual, to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). Courts use the same standard when analyzing Title VII and NYHRL claims. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007); *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003).

The Supreme Court set forth the elements that a plaintiff must prove in order to establish a *prima facie* case under Title VII in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, a plaintiff must establish that (1) he was within a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Id.* at 802; *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009).

"However, the survival of a complaint under Rule 12(b)(6) scrutiny in an employment discrimination case 'does not rest on whether it contains specific facts establishing a prima facie case under *McDonnell Douglas*.'" *Figueroa v. RSquared NY, Inc.*, 89 F. Supp. 3d 484, 489 (E.D.N.Y. 2015) (Spatt, J.) (quoting *Lax v. 29 Woodmere Blvd. Owners, Inc.*, 812 F.Supp.2d 228, 236 (E.D.N.Y. 2011)); *Fanelli v. New York*, 51 F. Supp. 3d 219, 231 (E.D.N.Y. 2014) (Spatt, J.); *Friel v. Cty. of Nassau*, 947 F. Supp. 2d 239, 251 (E.D.N.Y. 2013) (Spatt, J.). "This is because, at the pleading stage, courts do not apply the *McDonnell Douglas* burden shifting test to analyze the evidentiary support for the discrimination claims." *Figueroa*, 89 F. Supp. 3d at 489; *Fanelli*, 51 F.

Supp. 3d at 231; *Friel*, 947 F. Supp. 2d at 251; *see also Gonzalez v. Carestream Health, Inc.*, 520 Fed.Appx. 8, 9–10 (2d Cir. 2013) ("To survive a motion to dismiss, a complaint alleging workplace discrimination . . . need not allege specific facts establishing a prima facie case of discrimination under *McDonnell Douglas* . . . .").

Rather, "[this Court] consider[s] only whether the complaint includes factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Gonzalez*, 520 Fed.Appx. at 10 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "In other words, the Court asks only whether a plaintiff has pled a *prima facie* case, not whether a plaintiff has established that case. Thus, the standard is simply whether the plaintiff's complaint, construed liberally, satisfies the federal pleading requirements for a claim of discrimination." *Figueroa*, 89 F. Supp. 3d at 489; *Fanelli*, 51 F. Supp. 3d at 231; *Friel*, 947 F. Supp. 2d at 251; *see also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) ("Plaintiffs need only comply with Rule 8(a)(2) by providing a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendants fair notice of plaintiffs' claims of age discrimination and the grounds upon which those claims rest.").

Here, the Plaintiff attempts to plead Title VII discrimination via allegations of sexual harassment. "Sexual harassment in the workplace violates Title VII's prohibition against gender discrimination when such harassment fits into one (or both) of two paradigms: (1) quid pro quo; and (2) hostile work environment." *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1154 (E.D.N.Y. 2003). Construing the Complaint liberally, as the Court must on a motion to dismiss, the Court finds that the Plaintiff adequately states a claim under both theories.

1. *Quid Pro Quo*

"Quid pro quo sexual harassment refers to situations in which 'submission to or rejection of unwelcome sexual conduct by an individual is used as the basis for employment decisions affecting such individual.'" *Perks*, 251 F. Supp. 2d at 1154 (quoting *Karibian v. Columbia University*, 14 F.3d 773, 777–78 (2d Cir. 1994)). To make out a *prima facie* case for such a claim against an employer, "an employee must show a tangible employment action, *i.e.*, that an explicit alteration in the terms or conditions of employment resulted from refusal to submit to a supervisor's sexual advances." *Rivera v. New York City Dep't of Correction*, 951 F.Supp.2d 391, 400 (E.D.N.Y. 2013) (citing *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 603 (2d Cir. 2006)). A tangible employment action usually "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Schiano*, 445 F.3d at 604 (quotations omitted). Employers are strictly liable for *quid pro quo* harassment committed by supervisors. *Perks*, 251 F. Supp. 2d at 1155.

The Complaint alleges that after months of unsuccessful sexual advances Bindels started tying his efforts towards the Plaintiff to promises of job security. Specifically, the Plaintiff claims that "on or about June 15, 2016, Bindels told plaintiff that his job at SV would be secure in the future if he would have sex with him" and then again "[o]n August 24, 2016, Bindels told plaintiff that he would make money at SV and have a secure future at SV if he had sex with him." Compl. ¶¶ 35, 38. The Complaint states that the Plaintiff not only rejected Bindels's offers in both instances, but also that he reported Bindels' conduct to another superior, Hovell, the general manager. *Id.* ¶¶ 36, 39, 41. Shortly thereafter, Bindels directed Hovell to fire the Plaintiff, who,

upon firing him, told the Plaintiff that the reason for his termination was that Bindels no longer wanted him at Smithtown Volkswagen. *Id.* ¶¶ 42, 45.

This case resembles *Walker v. AMR Servs. Corp.*, 971 F. Supp. 110 (E.D.N.Y. 1997), in which the Plaintiff "allege[d] she was subjected to months of advances and harassing comments, and she was terminated two months after rejecting the advances and one week after complaining of them." *Id.* at 115. Judge Dearie found that "[t]hese allegations raise[d] the reasonable inferences that plaintiffs reaction to the harassment affected tangible aspects of the terms and conditions of her employment, and that her rejection of her supervisor's advances caused tangible job detriments." *Id.* Similarly, the Plaintiff states a plausible theory that the Defendants fired him as a backlash for failing to succumb to Bindels's overtures.

The Court is mindful, as the Defendants argued, that conclusory assertions that an adverse employment action occurred because of discriminatory animus, without more, cannot state a claim for discrimination. However, the Defendants fail to direct the Court to any case law establishing that the circumstances described here do not suffice at the pleading stage.

Instead, the Defendants string-cite without explanation a series of cases holding that the Court need not accept conclusory allegations of causation as true. Unlike these cases, where the plaintiffs failed to articulate ***any*** facts supporting an inference of discrimination, the Complaint details multiple sexual advances tied to promises of job security made by Bindels, and specifically alleges that Bindels directed a general manager to fire the Plaintiff based on his reaction to those advances. *See Lenart v. Coach*, 131 F. Supp. 3d 61, 67–69 (S.D.N.Y. 2015) (dismissing case because all allegations were either heard second hand or contradicted by other allegations in the complaint); *Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 371 (S.D.N.Y. 2015) (dismissing complaint alleging gender bias "upon information and belief" and omitting any reference to

statements or patterns of decision-making by the defendants); *Brodt v. City of New York*, 4 F. Supp. 3d 562, 568–69 (S.D.N.Y. 2014) (dismissing complaint describing offending conduct as merely "annoying" and failing to link conduct to discriminatory animus).

Further, the Court disagrees with the Defendants' assertion that the sequence of events leading up to the Plaintiff's termination does not support an inference of discriminatory intent. Bindels sent the lewd pictures to the Plaintiff in February, but did not fire the Plaintiff until September. Therefore, according to the Defendants, the harassment could not have been the cause of the adverse employment action.

However, this characterization misstates the allegations in the Complaint. While the first advance may have happened in February, several intermediate incidents allegedly occurred between when Bindels sent the pictures and the Plaintiff's termination. In addition, the Complaint states that as time progressed the advances became more serious and were tied to promises of job security. Considering that the last overture by Bindels occurred merely eight days before the Plaintiff's firing, it is plausible that – taking the allegations in the Complaint as true and drawing all reasonable inferences in favor of the Plaintiff – the Plaintiff's refusal to relent in his opposition to Bindels's sexual advances drove the decision underlying his termination.

The Court also rejects the Defendants' argument that the Plaintiff failed to plausibly allege that he was not terminated for bona fide job-related reasons. For the reasons previously discussed, the Court declines to consider the extrinsic evidence attached to the motion to dismiss purportedly showing that Plaintiff was discharged due to unsatisfactory performance. *See supra* II.B. Looking at the Complaint alone, the Plaintiff alleges that he performed all of his responsibilities in a satisfactory manner and that the Defendants did not tell him that performance was the reason for his termination. Compl. ¶¶ 17–22, 46, 49.

13

As a result, this case is distinguishable from those cited by the Defendants in their reply, which involved complaints containing explicit factual allegations that the adverse employment action occurred for non-discriminatory reasons. *See Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015) (dismissing the case because the complaint contained facts stating the "continued errors were the reason for [the plaintiff's] dismissal"); *Johnson v. Morrison & Foerster LLP*, No. 14-CV-428 JMF, 2015 WL 845723, at *6 (S.D.N.Y. Feb. 26, 2015) (dismissing the case because the complaint contained a statement that management fired the plaintiff for late arrival to work). Regardless, the Defendants base this argument on a misapplication of the *McDonnell Douglas* burden shifting framework, which does not apply on a motion to dismiss. At the pleading stage, the Court must only consider whether the Complaint includes factual allegations to sufficiently plead a *prima facie* case, not whether a plaintiff established that case. *Figueroa*, 89 F. Supp. 3d at 489; *Fanelli*, 51 F. Supp. 3d at 231; *Friel*, 947 F. Supp. 2d at 251.

Accordingly, the Court is satisfied that the allegations in the Complaint, taken as true, state a claim for *quid pro quo* sexual harassment.

### 2. Hostile Work Environment

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex.'" *Patane*, 508 F.3d at 113 (quoting *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)). These three elements are termed,

respectively, the objective, subjective, and prohibited causal factor requirements. *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

To show that conduct was objectively severe or pervasive, a plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). In making a determination as to the objective severity or pervasiveness of challenged conduct, courts consider "the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

"However, a plaintiff need not prove all of these elements at the pleading stage." *Falcon v. City Univ. of New York*, 263 F. Supp. 3d 416, 30 (E.D.N.Y. 2017) (Spatt, J.). "Ultimately, to avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that []he was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse.'" *Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)). The Second Circuit has "repeatedly cautioned against setting the bar too high" for defeating a motion to dismiss. *Id.* (internal quotation marks and citation omitted).

Applying these standards here, the Court finds that the Plaintiff stated a claim for hostile work environment. According to the Complaint, Bindels engaged in a prolonged campaign of unwanted sexual advances towards the Plaintiff. This campaign began when Bindels allegedly sent

to the Plaintiff several full body naked pictures of himself masturbating. Compl. ¶¶ 23–25. It continued with multiple verbal overtures seeking intercourse with the Plaintiff, including proposals overtly tied to the Plaintiff's job security. *Id.* ¶¶ 27, 29, 31, 35. The Plaintiff alleges that Bindels kept going despite multiple rejections and protests from the Plaintiff. *Id.* ¶¶ 28–34, 36, 39.

Construed as true, these facts plausibly allege that the Plaintiff faced harassment of such a quality and quantity that a reasonable employee would find the conditions of his employment altered for the worse.

Numerous courts have found that alleging a continuous pattern of overt and unwanted solicitation of sexual intercourse can sustain a hostile work environment claim. *See, e.g.*, *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 305–06 (E.D.N.Y. 2016) (Spatt, J.) (finding complaint stated hostile work environment claim employees "repeatedly propositioned female employees and attempted to engage in sexual relations"); *Adams v. City of New York*, 837 F. Supp. 2d 108, 126 (E.D.N.Y. 2011) (finding "a pattern of aggressive, unwanted sexual advances" to be "the sort of frequent contact that would make any 'reasonable [person]' severely uncomfortable in the workplace"); *Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491, 501 (E.D.N.Y. 2001) (finding that "repeated and unwelcome sexual advances and intrusions" can sustain a cause of action for hostile work environment); *Walker*, 971 F. Supp. At 114 (finding that repeated propositioning over two month period "if true, sufficiently altered the conditions of plaintiffs employment and may be considered by a reasonable jury to qualify as severe or pervasive harassment").

In addition, many courts have rejected motions to dismiss hostile work environment claims when the plaintiff claimed that the defendant sent graphic sexual imagery to the plaintiff or displayed it in the workplace. *See, e.g.*, *Patane*, 508 F.3d at 114 (finding that regularly subjection

to pornographic videos in the workplace constituted sufficient facts to defeat motion to dismiss); *Conforti*, F. Supp. 3d at 306 ("[A] reasonable jury could easily conclude that the allegations that the Plaintiff's supervisors . . . repeatedly viewed pornography at work, even when viewed in isolation, were objectively severe and created an environment that was hostile toward women."); *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 326 (N.D.N.Y. 2013) (finding the placement of offensive and sexually suggestive pictures throughout the workplace "to be sufficiently severe or pervasive to create a hostile work environment").

Here, the Complaint contains both types of sexual misconduct – regular unwelcome sexual advances and exposure to graphic sexual imagery. When viewed in conjunction, Bindels's conduct can reasonably be construed to contribute to an overall environment of gender hostility. *See Terry*, 336 F.3d at 148 ("In determining whether a hostile environment exists, we must look at the 'totality of the circumstances."). For this reason, the Court finds that the Plaintiff has also plausibly alleged a hostile work environment claim.

## D. THE RETALIATION CLAIMS

In addition to its anti-discrimination provisions, Title VII forbids an employer from terminating an employee "because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a). Similarly, the NYHRL prohibits the discharge of employees in retaliation for their opposition to discriminatory practices. N.Y. Exec. Law § 296(1)(e). Just as in discrimination cases, courts apply the same analysis to retaliation claims under both laws. *Kaible*, 27 F. Supp. 2d at 377 (citing *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1177 (2d Cir. 1996)).

The order and allocation of burdens of proof in retaliation cases follow that of the general disparate treatment analysis as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–

05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). In order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) he was engaged in a protected activity under Title VII; (2) the defendant was aware of the plaintiff's participation in the protected activity; (3) the employer took an adverse action against the plaintiff based upon his activity; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer. *Schiano*, 445 F.3d at 608; *Terry*, 336 F.3d at 141. However, as with the Title VII discrimination claims, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn*, 795 F.3d at 316.

### 1.    Protected Activity

"[A]ctivities protected under Title VII and NYHRL fall into two broad categories: (1) *opposing* any practice made an unlawful employment practice by Title VII or the NYHRL (an 'opposition claim') or (2) making a charge, testifying, assisting, or *participating in* any manner in an investigation, proceeding, or hearing under Title VII or the NYHRL (a 'participation claim')." *Kaible*, 27 F. Supp. 2d at 377.

The Defendants' sole argument under this element is that the Plaintiff failed to plead facts demonstrating that he engaged in a protected activity other than post-termination grievances to the EEOC. The facts pleaded are otherwise. The Complaint specifically alleges that the Plaintiff raised an informal complaint about Bindels's sexual advances to Hovell, a general manager at Smithtown Volkswagen. Compl. ¶ 41.

The law is clear that informal complaints to management about discriminatory activity fall within the "opposition" component of the protected activity element. *See, e.g.*, *Littlejohn*, 795 F.3d at 318–19 (explaining that the "opposition clause protects such complaints to management and

18

protests against discrimination"); *Cruz*, 202 F.3d at 566 ("[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection, this notion of 'opposition' includes activities such as 'making complaints to management . . . and expressing support of co-workers who have filed formal charges.'" (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990))); *Falcon*, 263 F. Supp. 3d at 428–29 ("The law also does not require that the employee file a formal complaint when opposing the discriminatory practices—an informal complaint is sufficient."); *Viscecchia v. Alrose Allegria LLC*, 117 F. Supp. 3d 243, 256–57 (E.D.N.Y. 2015) ("There is no question that directly complaining to an employer about a discriminatory policy is sufficient to constitute 'protected activity' for purposes of his Title VII and NYSHR retaliation claim."); *Martin v. State Univ. of N.Y.*, 704 F.Supp.2d 202, 227 (E.D.N.Y. 2010) ("It is clearly established that informal complaints to supervisors constitute protected activity under Title VII.").

The Court need not address whether the Plaintiff's complaints to the EEOC satisfy the "participation" clause, because the Complaint adequately pleads that the Plaintiff engaged in a protected activity through an opposition claim.

### 2. Awareness of Participation in Protected Activity

"As to the second element, implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).

The Defendants argue that the Complaint fails to establish this prong because Hovell made the decision to terminate the Plaintiff on his own, and the Complaint lacks an allegation that Hovell informed Bindels of the Plaintiff's informal complaint. At the outset, the gravamen of this

argument is based in extrinsic evidence beyond the proper scope of consideration at this stage of the litigation. *See supra* II.B. These facts are not in the Complaint, but rather are introduced through affidavits attached to the motion to dismiss.

Limiting its review to the Complaint itself, the Court finds that the facts, viewed as a whole, support the inference that Bindels knew about the Plaintiff's objections to Hovell. The Plaintiff not only alleges that Bindels directed Hovells to terminate the Plaintiff in retaliation for complaining about the sexual harassment, but also that Hovell told him that the adverse employment action occurred because "Joe (Bindels) no longer wants you here." Compl. ¶¶ 42, 45. Both statements impute knowledge about the Plaintiff's opposition to Bindels. Bolstering this inference, Bindels's role as a supervisor at Smithtown Volkswagen encompassed the authority to fire employees and make personnel decisions. Compl. ¶ 11.

Therefore, taking the allegations in the Complaint at face value, it is at least plausible that Bindels knew of the Plaintiff's participation in a protected activity.

### 3. Causation

With regard to causation, "a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). "[F]or an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* That is, "a plaintiff alleging retaliation in violation of Title VII must show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 133 S.Ct. 2517, 2526, 186 L.Ed.2d 503 (2013)).

"A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). The Second Circuit "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). Of course, like many aspects of causation in the Title VII context, the inquiry is dependent on the relevant circumstances of the case. *Conforti*, 201 F. Supp. 3d at 302.

Here, the circumstances create a plausible inference of a causal nexus due to the temporal proximity between when the Plaintiff engaged in the protected activity of the informal complaint and when Hovell gave him the notice of termination – a mere eight days. Compl. ¶¶ 41–44. Case law finding allegations of a causal connection based on analogous lengths of time between the protected activity and the adverse employment action is legion. *See, e.g.*, *Vega*, 801 F.3d at 92 (two months); *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217–18 (2d Cir. 2001) (twenty days); *Reed*, 95 F.3d at 1178 (twelve days); *Conforti*, 201 F. Supp. at 303–04 (two months); *Reynoso v. All Foods, Inc.*, 908 F. Supp. 2d 330, 342 (E.D.N.Y. 2012) (Spatt, J.) (two weeks); *Walker,* 971 F. Supp. at 115–16 (one week).

Further supporting this inference, the Plaintiff alleges that Bindels directed Hovell to terminate the Plaintiff and that Hovells explained to the Plaintiff that the reason for his firing was that "Joe (Bindels) no longer wants you here." Compl. ¶¶ 42, 45. At a minimum, these statements

provide circumstantial evidence of a causal connection. While the Plaintiff may ultimately be unable to prove these allegations, the Court need not weigh the evidence at this time.

As a result, the Court rejects the Defendants' demands for additional proof of causation at this early stage of the litigation for the same reason that it rejected these arguments in the context of the *quid pro quo* claims. *See Reynoso*, 908 F. Supp. at 343 (rejecting argument that plaintiff must put forward "evidence or explanation other than perhaps temporal proximity to establish causal connection" at the pleading stage because "the allegations necessary to satisfy the Plaintiff's initial burden is 'minimal' and 'de minimis'" (quoting *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 380–81 (2d Cir. 2001)).

Therefore, the Court also finds that the Plaintiff adequately stated a claim for retaliation.

### III.  CONCLUSION

For the foregoing reasons, the Defendants motion to dismiss pursuant to Rule 12(b)(6) is denied in all respects.


It is **SO ORDERED**:

Dated:  Central Islip, New York

       August 13, 2018

                                          /s/ Arthur D. Spatt

                                        ARTHUR D. SPATT
                                        United States District Judge